IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| OCIMUM BIOSOLUTIONS (INDIA) LIMITED, <br><br> Plaintiff, <br><br> v. <br><br> LG CORP, LG CHEMICAL LTD, LG LIFE SCIENCES LTD, and LG CHEM LIFE SCIENCES INNOVATION CENTER, INC., <br><br> Defendant. | C.A. No. 19-2227 (MN) |

### MEMORANDUM OPINION

Christopher Page Simon, Kevin Scott Mann, CROSS & SIMON, LLC, Wilmington, DE; C. Edward Polk, Jr., POLK LAW PLLC, Ashburn, VA – Attorneys for Plaintiff.

David Ellis Moore, Bindu Ann George Palapura, Stephanie E. O'Byrne, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Virginia A. Gibson, HOGAN LOVELLS US LLP, Philadelphia, PA; Steven M. Levitan, Gurtej Singh, HOGAN LOVELLS US LLP, Menlo Park, CA; Joseph J. Raffetto, Andrew J. Lee, HOGAN LOVELLS US LLP, Washington, DC – Attorneys for Defendants.

March 11, 2021
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE:**

Plaintiff Ocimum Biosolutions (India) Limited ("Ocimum") has sued LG Corp, LG Chemical Ltd., LG Life Sciences Ltd., and LG Chem Life Sciences Innovation Center, Inc., for six counts arising from alleged breach of a licensing agreement. (D.I. 2). LG Corp and LG Life Sciences Ltd. ("LG Life Sciences") have been voluntarily dismissed from the case. (D.I. 14). Pending before the Court is the Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (D.I. 19) filed by LG Chemical Ltd. ("LG Chem") and LG Chem Life Sciences Innovation Center, Inc. ("LGCLSIC") (collectively, "Defendants"). The motion has been fully briefed. (D.I. 20; D.I. 25; D.I. 27). For the reasons set forth below, the motion to dismiss is GRANTED.

I.  **BACKGROUND**

Ocimum, through its U.S. subsidiary Ocimum Biosolutions, Inc. ("Ocimum USA"), is a successor to Gene Logic Inc. ("Gene Logic"). (D.I. 2 ¶¶ 17, 52, 56). Gene Logic owned a product called GeneExpress, which comprised a database of human biological information and associated computer software. (*Id.* ¶¶ 17–18). LG Chem is a South Korean corporation, and LGCLSIC is its wholly owned Delaware subsidiary. (*Id.* ¶¶ 3, 5; D.I. 22).

On October 15, 2000, Gene Logic and LG Chem entered into an agreement ("the Access Agreement") by which LG Chem gained access to the GeneExpress Product, comprising the Oncology Datasuite and Gene Logic Software. (D.I. 2 ¶¶ 17, 30–32). The Oncology Datasuite contained genetic data derived from normal and cancerous tissues. (*Id.* ¶¶ 29, 31). Gene Logic Software enabled visualization, analysis, indexing, and mining of the data. (*Id.* ¶ 32).

The Access Agreement required LG Chem to obtain consent from Gene Logic before disclosing information contemplated by the agreement:

> **Restriction on Disclosure and Resale.** Except for disclosure to LG Chem's Affiliates, and LG Chem's and LG Chem's Affiliates' respective employees and consultants to the extent permitted under Section 7, LG Chem shall not provide Base Information contained within the GeneExpress$^{TM}$ Product, the GeneExpress$^{TM}$ Data Warehouse, Profiling/Cloning Data or any Gene Logic Technology or Improvement thereto to any Third Party for any reason without prior written consent of Gene Logic, which consent shall not be unreasonably withheld or delayed. The Parties acknowledge and agree that LG Chem may desire to enter into collaborations with or grant licenses to Third Parties to develop pharmaceutical products, including Therapeutic Products, and that it is reasonable to disclose to Third Parties specific Base Information contained within the GeneExpress$^{TM}$ Product, the GeneExpress$^{TM}$ Data Warehouse or the Profiling/Cloning Data in connection with such collaborations or licenses after first making a request to Gene Logic. The Parties further acknowledge and agree that LG Chem shall have no right to disclose to Third Parties Base Information contained within the GeneExpress$^{TM}$ Product or the GeneExpress$^{TM}$ Data Warehouse, or the Profiling/Cloning Data, for use in generating a data base containing Base Information that will be made available to other Third Parties on a commercial basis.

(D.I. 20-1 § 5.2(c)).

The agreement obligated LG Chem to discontinue use and return the GeneExpress Product to Gene Logic at the end of the term:

> **Security of GeneExpress$^{TM}$ Product, Profiling/Cloning Data and Gene Logic Software.** . . . (c) Upon the end of the Term, LG Chem shall immediately discontinue use of the GeneExpress$^{TM}$ Product and LG Chem shall (i) cooperate with Gene Logic to terminate any encrypted link to Gene Logic's computer system and (ii) promptly deliver to Gene Logic copies of the Oncology DataSuite$^{TM}$ Product, the [Gene Logic] Software, and any other parts of the GeneExpress$^{TM}$ Product that are not expressly owned by LG Chem . . . .

(*Id.* § 7.1).

The agreement required each party "to hold in confidence and not use on behalf of itself or others all technology, data, samples, technical and economic information . . . , commercialization, clinical and research strategies, know-how and trade secrets provided by the other Party . . . through

2

the end of the Term." (*Id.* § 7.2(a)). The obligations of § 7.2 were to survive for five years past the expiration or termination of the agreement. (*Id.* § 7.2(b)).

The agreement stated that "[e]ach party will use at least the same standard of care as it uses to protect proprietary or confidential information of its own to ensure that such employees, agents, consultants and sublicensees do not disclose or make any unauthorized use of the Confidential Information," as defined by the agreement. (*Id.* § 7.3). The agreement also required each party to notify the other prior to publication of results of activities contemplated by the agreement:

> **Publication.** The Parties shall cooperate in appropriate publication of the results of activities contemplated by this Agreement, but subject to the predominating interest to obtain patent protection for any patentable subject matter and to Gene Logic's business interest in preserving the value of the GeneExpress™ Data Warehouse. . . . To this end, prior to any public disclosure of such results, the Party proposing disclosure shall send the other Party a copy of the information to be disclosed, and shall allow the other Party thirty (30) days from the date of receipt in which to determine whether the information to be disclosed contains subject matter for which patent protection should be sought prior to disclosure, otherwise contains Confidential Information of the reviewing Party, or, with respect to any proposed disclosure by LG Chem, contains information that Gene Logic reasonably believes would impair the value of the GeneExpress™ Data Warehouse.

(*Id.* § 7.5).

The agreement contained a "Survival" provision, which stated that §§ 5.2(c), 7.1(c), 7.2, 7.3, and 7.5, among others, "shall survive the termination or expiration of this Agreement." (*Id.* § 11.11).

The Access Agreement terminated on December 31, 2002. (D.I. 2 ¶ 23; D.I. 20-1 § 1.29). On December 6, 2002, Gene Logic sent a termination letter to LG Chem, which stated in part:

> Pursuant to Section 5.2(a) of the agreement, access to the GeneExpress® Product (Oncology DataSuite and the Gene Logic® Software) is limited to the term of the agreement. Accordingly, pursuant to Section 7.1(c), please ship the GeneExpress® Product

3

> (all system and data disks containing Gene Logic's oncology data and all software programs, including any APIs) back to my attention by January 15th. Additionally, please destroy or erase all Gene Logic® data on CD[]s, hard disks, or tapes that were created or transferred to LG Biomedical Institute during the Term that contain the Oncology data and provide a letter to me certifying such destruction by January 15th.

(D.I. 2 ¶ 24). Ocimum alleges, "[o]n information and belief, LG Chem falsely certified on or before January 15, 2003 that it had complied with the termination provisions of § 5.2 of the [Access Agreement]." (*Id.* ¶ 25).

On October 14, 2007, Ocimum and Ocimum USA executed an Asset Purchase Agreement with Gene Logic ("the 2007 Asset Purchase Agreement"), whereby Ocimum USA purchased substantially all the assets of Gene Logic's genomics division. (*Id.* ¶¶ 52–53; D.I. 25-7 at 3). On December 14, 2007, Ocimum USA and Gene Logic executed an Assignment and Assumption Agreement, whereby Gene Logic assigned to Ocimum USA all rights, title, obligations, and interest in certain contracts, including the Access Agreement, to which Gene Logic was a party. (*Id.* ¶ 56; D.I. 25-8).

On August 22, 2012, former defendant LG Life Sciences[1] filed a U.S. patent application that stated its reliance on data from the GeneExpress Oncology DataSuite of Gene Logic. (D.I. 2 ¶ 64). LG Life Sciences did not seek consent from or provide notice to Ocimum before filing the patent application. (*Id.* ¶ 65). On July 21, 2014, LG Life Sciences and several other entities including Seoul National University published an article titled "Newly Identified Cancer-Associated Role of Human Neuronal Growth Regulator 1 (NEGR1)." (*Id.* ¶ 66). The article stated that certain data were obtained by analyzing the GeneExpress Oncology DataSuite from Gene

---

[1] LG Chem stipulated in a Notice of Dismissal that LG Life Sciences is a division of LG Chem. (D.I. 14 at 2).

Logic. (*Id.*). LG Life Sciences did not seek consent from or provide notice to Ocimum before publishing the article. (*Id.* ¶ 67). Around the time of the publication of the article, Seoul National University filed a U.S. patent application that stated reliance on data from the GeneExpress Oncology DataSuite of Gene Logic. (*Id.* ¶ 68). LG Life Sciences and Seoul National University did not seek consent from or provide notice to Ocimum before filing the patent application. (*Id.* ¶¶ 69–71).

On December 5, 2019, Ocimum filed its Complaint, alleging, as to LG Chem, breach of contract (Count I) and, as to both Defendants, misappropriation of trade secrets under the Delaware Uniform Trade Secrets Act ("DUTSA"), 6 DEL. C. § 2001 *et seq.* (Count II); misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq.* (Count III); unjust enrichment (Count IV); injunction (Count V); and conversion (Count VI). (D.I. 2).

On March 25, 2020, Defendants filed the motion to dismiss. As to all claims, Defendants raise three challenges: that Ocimum lacks standing, that the claims are untimely, and that the asserted obligations had expired prior to Defendants' alleged misconduct. Defendants also argue that Counts IV–VI are preempted by the DUTSA. Finally, Defendants assert that Ocimum fails to allege any misconduct on the part of defendant LGCLSIC.

## II. LEGAL STANDARDS

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). When presented with a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), district courts conduct a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the Court separates the factual and legal elements of a claim, accepting "all of the complaint's well-pleaded facts as true, but [disregarding] any legal conclusions." *Id.* at 210–11. Second, the Court determines "whether the facts alleged in the complaint are sufficient to show . . . a 'plausible claim

for relief.'" *Id*. at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).  When deciding a motion to dismiss under Rule 12(b)(6), a court should consider the allegations in the complaint, "as well as documents that are attached to or submitted with the complaint, and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case."  *Siwulec v. J.M. Adjustment Servs., LLC*, 465 F. App'x 200, 202 (3d Cir. 2012) (internal quotation marks and alterations omitted).

"To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Dismissal under Rule 12(b)(6) is appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Fowler*, 578 F.3d at 210.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court is not obligated to accept as true "bald assertions" or "unsupported conclusions and unwarranted inferences."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).  Instead, "[t]he complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of [each] necessary element" of a plaintiff's claim.  *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321 (3d Cir. 2008) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Breach of Contract (Count I)

Ocimum alleges that LG Chem breached the Access Agreement by (1) "continuing to possess, have access to, and make use of" GeneExpress after expiration of the agreement; (2) revealing proprietary information under the agreement to third parties without Ocimum's knowledge or consent; (3) allowing collaborators to access and use the proprietary information; and (4) publishing the proprietary information without Ocimum's knowledge or consent. (D.I. 2 ¶¶ 80–84). Defendants argue that this claim must be dismissed because Ocimum lacks standing, the claim is time-barred, and Defendants' contractual obligations had expired by the time of the alleged misconduct. The Court addresses each argument below.

##### 1. Standing

Defendants assert that Ocimum lacks standing because the Assignment and Assumption Agreement assigned Gene Logic's contracts to Ocimum USA, (D.I. 25-8), and thus it is Ocimum USA's right to enforce the Access Agreement. (D.I. 20 at 18–19). "[T]he requirement that a litigant have standing . . . is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006). To have standing, a plaintiff must have an injury in fact that is fairly traceable to the defendant's conduct and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "As a general matter, only a party to a contract has standing to enforce a contract and sue for breach of that contract." *Rottlund Homes of N.J., Inc. v. Saul, Ewing, Remick & Saul, L.L.P.*, 243 F. Supp. 2d 145, 153 (D. Del. 2003).

"When a Rule 12(b)(6) motion relies on the absence of Article III standing, it is analyzed pursuant to . . . Rule 12(b)(1)." *Reach Acad. for Boys & Girls, Inc. v. Del. Dep't of Educ.*, 46 F. Supp. 3d 455, 463–64 (D. Del. 2014) (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d

Cir. 2007)). Challenges to standing under Rule 12(b)(1) can be either facial or factual. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual challenge to standing, the trial court's authority to hear the case is at issue, and the trial court is free to weigh evidence to reach a conclusion. *Id.* The standard for deciding a facial attack on standing is the same as that for deciding a Rule 12(b)(6) motion to dismiss. *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). In other words, the court must accept as true all material allegations set forth in the complaint and construe those facts in favor of the nonmoving party. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). To survive a motion to dismiss, the "complaint must contain sufficient factual matter that would establish standing if accepted as true." *Horizon Healthcare*, 846 F.3d at 633 (quoting *Iqbal*, 556 U.S. at 678) (marks omitted).

Here, the Complaint alleges that Gene Logic is Ocimum's "predecessor," (D.I. 2 ¶ 17), and Ocimum is the assignee of the Access Agreement, (*id.* ¶ 81). In opposition to the motion to dismiss, Ocimum states that Ocimum USA transferred to Ocimum certain intellectual property assets, purportedly including all relevant technology and contracts, in two successive agreements ("the Ownership Agreement" and "the 2015 Asset Purchase Agreement"). (D.I. 25 at 16–18 (citing D.I. 25-9, D.I. 25-10)). The day after filing its Complaint, Ocimum filed a motion in a Chapter 7 proceeding before the U.S. Bankruptcy Court for the District of Delaware, to amend and clarify that the 2015 Asset Purchase Agreement included not just intellectual property as expressly contemplated, but also the contracts necessary to enforce the intellectual property rights.[2] (*See* D.I. 20-2 ¶ 11).

---

[2] The Court looks with disfavor on Ocimum's withholding explanation and related documents until responding to the motion to dismiss, but finds the documents to be

8

Defendants' motion to dismiss is made pursuant to Rule 12(b)(6), and Defendants state that they accept Ocimum's allegations as true for purposes of this motion (D.I. 20 at 3 n.2). Thus, the Court views the standing challenge as a facial attack and accordingly draws all reasonable inferences in favor of Ocimum. Despite this plaintiff-friendly standard, the bare allegations in the Complaint and related documents do not plausibly establish Ocimum's standing to assert breach of the Access Agreement. Neither the Ownership Agreement nor the 2015 Asset Purchase Agreement, Ocimum concedes, specifically mentions assignment or transfer of "contracts." (D.I. 25 at 17). As the proposed amendment to the 2015 Asset Purchase Agreement remains pending in the bankruptcy proceeding, the Court finds no support for Ocimum's assertion that it is the assignee of the Access Agreement.

Ocimum argues alternatively that it has standing under Rule 17(a)(1)(F) of the Federal Rules of Civil Procedure, which provides that "a party with whom or in whose name a contract has been made for another's benefit" "may sue in their own names without joining the person for whose benefit the action is brought." FED. R. CIV. P. 17(a)(1)(F). Ocimum asserts that it is a named party to the 2007 Asset Purchase Agreement, by which Gene Logic transferred assets including contracts to Ocimum USA. (D.I. 25 at 17; *see* D.I. 25-7 at 11 ("[Gene Logic] agrees to sell to [Ocimum USA], [Ocimum USA] agrees to purchase, and [Ocimum] agrees to cause [Ocimum USA] to purchase . . .")). Although Rule 17 may allow Ocimum to enforce the 2007 Asset Purchase Agreement, the Court cannot agree that Rule 17 extends Ocimum's standing to enforce the contracts transferred therein.

---

incorporated into the Complaint by reference to Gene Logic as predecessor of Ocimum. *See Siwulec*, 465 F. App'x at 202.

9

Ocimum also argues that it has standing under Rule 17(a)(3) because under the pending amendment to the 2015 Asset Purchase Agreement, Ocimum USA ratified Ocimum's assertion of the breach of the Access Agreement claims. (D.I. 25 at 18). "A proper ratification under Rule 17(a) requires that the ratifying party (1) authorize continuation of the action and (2) agree to be bound by its result." *ICON Grp., Inc. v. Mahogany Run Dev. Corp.*, 829 F.2d 473, 478 (3d Cir. 1987). The amendment to the 2015 Asset Purchase Agreement does not refer to this action and therefore does not ratify Ocimum to assert breach of contract on behalf of Ocimum USA.[3]

Thus, Ocimum has failed to plausibly allege standing to assert its breach of contract claim.[4]

### 2. Statute of Limitations

Next, Defendants argue that Ocimum's breach of contract claims are time-barred and not tolled. (D.I. 20 at 11–13). Breach of contract claims are subject to a three-year statute of limitations, which begins to run when the cause of action accrues. 10 DEL. C. § 8106. The limitations period begins at the time of the wrongful act, "even if plaintiff is ignorant of the cause of action." *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 562 (D. Del. 2010). Although the statute of limitations is an affirmative defense, the Third Circuit allows courts to consider the statute of limitations as a grounds for dismissal under Rule 12(b)(6) "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the

---

[3] By contrast, the proposed amendment states that the purpose and intent of the 2015 Asset Purchase Agreement was that Ocimum USA "would not be a named or necessary party to the litigation titled *Ocimum Biosolutions (India) Limited v. AstraZeneca UK Limited*, C.A. No N15C-08-168 WCC CCLD." (D.I. 20-2 at 17).

[4] Rule 17(a)(3) states that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." FED. R. CIV. P. 17(a)(3). Thus, Ocimum will be given a reasonable time to seek ratification, joinder, or substitution as well as cure the other pleading defects identified in this Opinion.

statute of limitations." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted). Conversely, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal." *Id.*

The three-year statute of limitations permits Ocimum to maintain a breach of contract claim based on alleged breaches occurring after December 5, 2016. *See AM Gen. Holdings LLC v. The Renco Grp., Inc.*, C.A. No. 7639-VCS, C.A. No. 7668-VCS, 2016 WL 4440476, at *11 (Del. Ch. Aug. 22, 2016) ("In the context of breach of contract claims, the date of breach typically supplies the accrual date as the elements of the claim can be linked to the act constituting the breach."). Ocimum has not alleged breach based on conduct after December 5, 2016. The most recent alleged misconduct occurred before August 22, 2012 or July 21, 2014, when LG Life Sciences publicized its reliance on and disclosure of GeneExpress data.[5] Thus, Ocimum's breach of contract claim is untimely unless the statute of limitations has been tolled.

Ocimum argues that the three-year statute of limitations is tolled under the doctrines of inherently unknowable injuries or fraudulent concealment. (D.I. 25 at 10–14). Delaware courts recognize three tolling doctrines: (1) inherently unknowable injuries, (2) fraudulent concealment, and (3) equitable tolling. *Ausikaitis ex rel. Masimo Corp. v. Kiani*, 962 F. Supp. 2d 661, 674 (D. Del. 2013). The doctrine of inherently unknowable injuries applies if "it would be practically impossible for a plaintiff to discover the existence of a cause of action." *Id.* (citation omitted).

---

[5] Defendants argue that the breach of contract claim is time-barred because the cause of action accrued on January 15, 2003, when the underlying misappropriation of trade secret claim accrued. (D.I. 20 at 11–13). The Court disagrees that Ocimum's breach of contract claim accrued at the time of the alleged misappropriation. Ocimum alleges conduct, such as publication of proprietary information, that would provide a basis for a breach of contract claim independent of trade secret misappropriation. To treat Ocimum's breach of contract claim as coextensive with misappropriation would undermine the express limitation that the Delaware trade secret laws do not displace "[c]ontractual remedies, whether or not based upon misappropriation of a trade secret." 6 DEL. C. § 2007(b)(1).

Fraudulent concealment tolls the statute of limitations "when a defendant has fraudulently concealed from a plaintiff the facts necessary to put him on notice of the truth." *Id.* (citation omitted). If a tolling doctrine applies, "the statute of limitations begins to run upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts." *Coleman v. Pricewaterhousecoopers, LLC*, 854 A.2d 838, 842 (Del. 2004) (internal quotation marks omitted) (emphasis in original).

Here, the only factual allegation in the Complaint that can be construed to support either asserted tolling doctrine is that LG Chem "falsely certified on or before January 15, 2003 that it had complied with the termination provisions of § 5.2 of the [Access] Agreement." (D.I. 2 ¶ 25). Without more, the Complaint does not allege fraudulent concealment with sufficient particularity under Rule 9(b) of the Federal Rules of Civil Procedure.[6] *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("To satisfy [the Rule 9(b)] standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."); *Byrnes v. DeBolt Transfer, Inc.*, 741 F.2d 620, 626–27 (3d Cir. 1984) ("[F]raud, and thus [the tolling doctrine of] fraudulent concealment, must be pleaded with particularity."). Furthermore, the doctrine of inherently unknowable injuries does not apply because Ocimum's injury was not "practically impossible for [Ocimum] to discover" after August 22, 2012 and July 21, 2014 when Defendants' alleged breaches were publicly disclosed.[7]

---

[6] For the first time in opposition to the motion to dismiss, Ocimum provided circumstantial details of its theory of fraudulent concealment. (*See* D.I. 25 at 6–8, 12–13). Ocimum, however, cannot amend its defective pleading in its briefs in opposition to a motion to dismiss. *Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988).

[7] Ocimum does not address these publication dates. Instead, Ocimum repeatedly states that "[a]bsent *seeing* these publications within three years of filing this lawsuit, Ocimum never

Ocimum's tolling arguments fail, the time bar is apparent on the face of the Complaint, and Count I is properly dismissed as untimely.

### 3. Expiration of Obligations

Defendants argue that Ocimum fails to state a breach of contract claim because LG Chem's obligations under the Access Agreement expired on December 31, 2007. (D.I. 20 at 14–17). Defendants note that § 7.2(b) of the Access Agreement states that the confidentiality and non-use obligations of § 7.2 were to survive for five years after termination of the agreement on December 31, 2002.[8] Notwithstanding § 7.2(b), the Access Agreement's "Survival" provision states that §§ 5.2(c), 7.1, 7.2, and 7.3 survive expiration of the agreement without an express duration. (D.I. 20-1 § 11.11). Defendants assert that the only plausible interpretation of these provisions is that all the sections listed in the Survival provision are subject to the five-year term of § 7.2(b). (D.I. 27 at 6). The Court disagrees. Although the Court harbors doubts that the parties intended for the provisions covered by § 11.11 to survive indefinitely, it is at least plausibly inferred that the obligations were in effect at the time of the accused misconduct. *See GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776 (Del. 2012) ("When interpreting a contract, the Court will give priority to the parties' intentions as reflected in the four corners of the agreement."). Thus, Defendants' argument that their obligations expired by 2007 do not constitute grounds for dismissing the breach of contract claim.

---

        would have known that [LG Chem] retained a copy of the Oncology Datasuite." (D.I. 25 at 7 (emphasis added); *see also id.* at 5, 10, 11). Actual notice for claim accrual, however, is not the law. *See Lincoln Nat'l Life Ins.*, 722 F. Supp. 2d at 562.

[8]        Ocimum concedes that LG Chem's obligations under § 7.2 ended on December 31, 2007. (D.I. 25 at 15).

13

### B. Misappropriation of Trade Secret Under the DUTSA (Count II) and Under the DTSA (Count III)

Ocimum alleges that Defendants violated the DUTSA and DTSA by unlawfully accessing and disclosing Ocimum's trade secrets after expiration of the Access Agreement. (*Id.* ¶¶ 91–92, 102, 104). The DUTSA and DTSA provide civil causes of action for the owner of a trade secret that is misappropriated. 6 DEL. C. § 2001 *et seq.*; 18 U.S.C. § 1836. Claims under the DUTSA and DTSA must be brought within three years after the misappropriation "is discovered or by the exercise of reasonable diligence should have been discovered." 6 DEL. C. § 2006; 18 U.S.C. § 1836(d). Under both the DUTSA and DTSA, a continuing violation constitutes a single claim of misappropriation. 6 Del C. § 2006; 18 U.S.C. § 1836(d). Therefore, Ocimum's misappropriation claims accrued, if not by January 15, 2003 when LG Chem allegedly falsely certified compliance with confidentiality and non-use obligations, then certainly by August 22, 2012 or July 21, 2014 when Ocimum should have discovered with reasonable diligence the facts underlying its misappropriation claims. As discussed under Count I, the time bar is apparent on the face of the Complaint, and thus Counts II and III are dismissed as untimely. *See Schmidt*, 770 F.3d at 249.[9]

### C. Unjust Enrichment (Count IV)

Ocimum alleges that Defendants were unjustly enriched by continuing to access Ocimum's trade secrets after expiration of the Access Agreement and without paying licensing fees or

---

[9] Defendants' remaining challenges to Counts II and III based on standing and expiration of obligations are unpersuasive. First, the unamended 2015 Asset Purchase Agreement did not expressly transfer contracts to Ocimum, but it did expressly transfer the trade secrets that Ocimum asserts in Counts II and III. (*See* D.I. 25-10 at 8). Second, as discussed in connection with Count I, it can be reasonably inferred that some of Defendants' obligations survived termination of the Access Agreement to provide a basis for Ocimum to assert misappropriation.

royalties. (D.I. 2 ¶¶ 107–12). Defendants argue that this claim must be dismissed as preempted. (D.I. 20 at 19–20). The DUTSA "displaces conflicting tort, restitutionary and other law of this State providing civil remedies for misappropriation of a trade secret." 6 DEL. C. § 2007(a). A claim is preempted if it is necessarily grounded in the same facts which purportedly support a trade secret misappropriation claim. *Ethypharm S.A. Fr. v. Bentley Pharm., Inc.*, 388 F. Supp. 2d 426, 433 (D. Del. 2005). In other words, DUTSA preemption applies if "failure of the misappropriation claim would doom the common law claim." *Id.*

Ocimum's unjust enrichment claim is based entirely on the same facts as Ocimum's trade secret misappropriation claims and is thus preempted. Ocimum appears to argue that DUTSA preemption applies only when trade secret misappropriation is an element of the preempted claim. (*See* D.I. 25 at 19 ("Like conversion, a finding of trade secret misappropriation is not needed to establish unjust enrichment.") (citing *Overdrive, Inc. v. Baker & Taylor, Inc.*, Civil Action No. 5835-CC, 2011 WL 2448209, at *5 (Del. Ch. June 17, 2011))). Rather, the DUTSA preempts claims that, *as pleaded*, rely exclusively on facts of trade secret misappropriation. *See, e.g.*, *Overdrive*, 2011 WL 2448209, at *9 ("Plaintiff's DUTPA claim is predicated on Baker & Taylor's alleged misuse of plaintiff's trade secrets . . . and is thus displaced by the DUTSA.").[10] Ocimum's unjust enrichment claim is "based entirely on" and therefore "necessarily grounded" in the same

---

10    The Court also rejects *Overdrive*'s finding that DUTSA preemption "depends on whether the information in question was in fact a *trade secret*." 2011 WL 2448209, at *5 (emphasis in original). Delaware courts "have almost uniformly [adopted] the majority view that Section 2007 of the DUTSA precludes common law claims based on misappropriation of business information even in cases in which the claim does not meet the statutory definition of 'trade secret' under the Code." *250ok, Inc. v. Message Sys., Inc.*, C.A. No. 2020-0588-JRS, 2021 WL 225874, at *4 (Del. Ch. Jan. 22, 2021) (citation omitted). *See also Ethypharm*, 388 F. Supp. 2d at 433 ("Because all claims stemming from the same acts as the alleged misappropriation are intended to be displaced, a claim can be displaced even if the information at issue is not a trade secret.").

facts underlying its trade secret misappropriation claims. Thus, Count IV is dismissed as preempted by DUTSA.[11]

### D. Injunction (Count V)

Ocimum seeks permanent injunctive relief based on Defendants' alleged wrongful conduct, "including but not limited to[] Defendants' misappropriation of Plaintiff's Trade Secrets, and the disclosure and use of this information." (D.I. 2 ¶ 114). Defendants argue that this count should be dismissed because injunctive relief is a remedy and not a separate cause of action. (D.I. 20 at 20). *See Birdman v. Office of the Governor*, 677 F.3d 167, 172–73 (3d Cir. 2012). Ocimum agrees that it intended to seek injunction as a form of relief and not assert it as a claim. (D.I. 25 at 19). Thus, Count V is dismissed.

### E. Conversion (Count VI)

Ocimum alleges that Defendants converted Ocimum's intellectual property, including GeneExpress and its associated database, by misappropriation. (D.I. 2 ¶¶ 122–25). This conversion claim is pleaded exclusively based on the facts underlying the misappropriation of trade secret claims. For the reasons discussed as to Count IV, the conversion claim is dismissed as preempted by the DUTSA.

### F. Allegations Against LGCLSIC

Defendants argue that claims against defendant LGCLSIC must be dismissed because Ocimum does not plausibly allege any wrongdoing on the part of LGCLSIC. (D.I. 20 at 20). The Complaint contains two allegations about LGCLSIC's conduct. First, the LGCLSIC website states

---

[11] The Court need not decide Defendants' other arguments for dismissal because this unjust enrichment claim cannot exist if based exclusively on trade secret misappropriation. *See 250ok*, 2021 WL 225874, at *4 ("[T]he DUTSA prohibits even alternatively pled common law claims that are based on the same wrongdoing as a trade secrets claim.").

that LGCLSIC "will further build LG Chem's global biotechnology and R&D capabilities across the pharmaceutical value chain" and "is committed to developing novel immuno-oncology therapies leveraging innovative platform technologies and targeted treatments."  (D.I. 2 ¶ 5). Second, the Complaint states, in conclusory fashion, that LGCLSIC was organized "in furtherance of [LG Chem's] scheme to misappropriate Plaintiff's trade secrets."  (*Id.* ¶¶ 8, 14).

Ocimum argues that the Court can infer LGCLSIC's liability based on allegations that "Defendants have continued to develop and manufacture drugs and diagnostic services using Plaintiff's proprietary information."  (D.I. 25 at 19–20 (citing D.I. 2 ¶¶ 10–12)).  That conclusory allegation fails to provide notice of each defendant's individual misconduct.  *See Adverio Pharma GmbH v. Alembic Pharm. Ltd.*, C.A. No. 18-73-LPS, 2019 WL 581618, at *6 (D. Del. Feb. 13, 2019) ("[A]llegations lumping multiple defendants together without providing allegations of individual conduct are frequently . . . insufficient to satisfy the notice pleading standard."). Ocimum also argues it can be reasonably inferred that LGCLSIC, touted as developing oncology therapies, unlawfully used Gene Logic's Oncology DataSuite.  (*Id.*).  Regardless of the superficial link of "oncology," the Complaint's only allegations about LGCLSIC's conduct are that LGCLSIC develops drugs.  It cannot be reasonably inferred that LGCLSIC committed any wrongdoing to do so.  Thus, Ocimum's Complaint fails to state a claim for relief against defendant LGCLSIC, and all claims are dismissed as to LGCLSIC.

      G.    **Leave to Amend**

Defendants request that the Court dismiss all claims with prejudice because amendment would be futile.  (D.I. 20 at 14, 17, 20).  Rule 15(a) of the Federal Rules of Civil Procedure, however, declares that "[t]he court should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2).  Although "the grant or denial of an opportunity to amend is within the discretion of the District Court," the Court must give some justifying reason for denial, "such as

17

undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim. *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Although Defendants have successfully shown myriad defects in Ocimum's pleadings, the Court is not persuaded that amendment of each claim would be futile. For example, the Court cannot rule out that Ocimum could properly allege standing or tolling of the statute of limitations. Accordingly, in view of the Third Circuit's liberal approach to amendment of pleadings, Ocimum will have the opportunity to amend its Complaint. *See Dole v. Arco Chem. Co.*, 921 F.2d 484, 488 (3d Cir. 1990).

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. An appropriate order follows.