IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| OCIMUM BIOSOLUTIONS (INDIA) LIMITED and Don A. Beskrone, Chapter 7 Trustee of OCIMUM BIOSOLUTIONS INC.<br>        Plaintiffs,<br><br>    v.<br><br>LG CHEMICAL LTD, ABION, INC. and GENCURIX, INC.<br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 19-2227 (MN)<br><br>JURY OF TWELVE DEMANDED<br><br>████████████<br><br>**Re: Docket No. 119** |

**PLAINTIFFS' OBJECTIONS TO THE MAGISTRATE'S REPORT AND RECOMMENDATION REGARDING MOTIONS TO DISMISS**

Plaintiffs, Ocimum Biosolutions (India) Limited and Don A. Beskrone, Chapter 7 Trustee of Ocimum Biosolutions Inc. (collectively "Ocimum"), by and through undersigned counsel, respectfully respond and object to the July 31, 2022 Report and Recommendation of The Honorable Christopher J. Burke [D.I. 119] (the "Recommendation") as follows:

### INTRODUCTION

Ocimum respectfully objects only to those portions of the Recommendation granting Abion, Inc. and Gencurix, Inc.'s (collectively, "A&GC") motion to dismiss and granting, in part, LG Chemical Ltd.'s ("LGC") motion to dismiss. *First*, the Recommendation finds, contrary to plausible allegations in the Second Amended Complaint ("SAC") which must be taken as true, that Ocimum has not alleged misappropriation by A&GC after they had knowledge of Ocimum's trade secrets. But paragraphs 15 and 185 plead misappropriation by A&GC after December 5, 2019 – the date they had actual notice of Ocimum's claims. Regarding offending patents at issue here, paragraph 15 states that "Abion and Gencurix continue to prosecute these patents, having received an office action for patent application number 16/129,206 from the USPTO on or about February 19, 2021." United States Patent & Trademark Office ("USPTO") records confirm that

A&GC were actively prosecuting the offending patents in 2020 and 2021 despite having knowledge of Ocimum's claims. The SAC also alleges that A&GC continue to possess and commercialize data and technology, *e.g.*, GenesWell BCT, substantially derived from Ocimum's trade secrets. These allegations are referenced in Ocimum's briefing (*e.g.*, D.I. 107 at 14-15) but not properly credited by the Recommendation, which errs in finding that Ocimum has not plausibly plead misappropriation by A&GC after December 5, 2019.

*Second*, based on the foregoing inaccurate factual finding, the Recommendation concludes that this Court lacks personal jurisdiction over A&GC. But the Recommendation correctly noted (p.35, fn. 31) that "it might be that Rule 4(k)(2) jurisdiction would exist" if Ocimum pleads that A&GC were prosecuting the '206 application after December 5, 2019. They were doing so and much more, as detailed above. With inferences drawn in Ocimum's favor, the Recommendation errs in finding that Ocimum has not plead actionable misappropriation by A&GC. For these reasons alone, all claims against A&GC should proceed forward.

*Third*, regarding LGC, the Recommendation found that Count 3 against LGC should be dismissed because Ocimum has not alleged any acts of misappropriation by LGC after enactment of the Defend Trade Secrets Act ("DTSA") in 2016. But paragraphs 15, 132, 144 and 193 of the SAC, when read with public USPTO records, show that current or former LGC employee Dr. Sang Seok Koh improperly assigned the offending patents to A&GC on June 21, 2018. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, LGC is responsible for acts of its current and former employees. Furthermore, paragraphs 10-12 of the SAC plausibly allege that LGC *currently* is selling drugs that embody Ocimum's trade secrets, and paragraphs 90, 124 and 191 plausibly allege that LGC still improperly possesses data from the Oncology Datasuite. For these reasons alone, Ocimum respectfully contends that Count 3 should proceed against LGC.

**GOVERNING LAW AND ARGUMENT**

A.      **THE RECOMMENDATION ERRS IN DISMISSING CLAIMS AGAINST A&GC.**

The Recommendation is subject to *de novo* review under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). *First*, the Recommendation correctly notes, as dictated by *Oakwood Labs. LLC v. Thanoo*, 999 F.3d 892 (3d Cir. 2021), that Ocimum alleges A&GC are "using" Ocimum's trade secrets, as defined under the relevant trade secret statutes. Recommendation at 28. At least *53 paragraphs* of the SAC detail and plausibly plead A&GC's improper use of Ocimum's trade secrets. SAC¶¶132-185. However, the Recommendation (footnote 23) states "it is not clear to the Court that the SAC sufficiently alleges that A&GC 'acquired' the Oncology Datasuite—in the sense of physically taking possession of the product." But this overly narrow interpretation of "use" was rejected by the Third Circuit in *Oakwood* (emphasis added):

> Only giving effect to the term "use" in the narrow context of replication or obvious incorporation of trade secret protected material in a competitor's product excludes a broad range of activity that is rightly seen as unauthorized use of a trade secret and, therefore, misappropriation. In accordance with its ordinary meaning and within the context of the DTSA, the "use" of a trade secret encompasses **all the ways** one can take advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose, such as "assist[ing] or accelerat[ing] research or development.

999 F.3d at 910. Ocimum alleges that A&GC currently are "using" research that is derived from Ocimum's trade secrets to obtain patents and commercialize a product throughout the world, including the United States, called GenesWell BCT. This is misappropriation under *Oakwood*.

Moreover, contrary to the overly narrow definition of "use" adopted by the Recommendation, misappropriated information need not be identical to Ocimum's trade secrets. Misappropriation exists where information, here, for example, GenesWell BCT, is "substantially derived" from Ocimum's trade secrets. *Callaway Golf Co. v. Dunlop Slazenger Group Americas,*

3

*Inc.*, 318 F.Supp.2d 216, 220 (D. Del. 2004)] ("[T]o state a claim for trade secret misappropriation, there must be use of a trade secret, and in order to prove use, the defendant's product must be substantially derived from the plaintiff's product."). The offending patents describe and show that Ocimum's trade secrets were used to create the patented product, *i.e.*, GenesWell BCT. D.I. 107 at 14-15. At a bare minimum, GenesWell BCT is "substantially derived" from Ocimum's trade secrets. SAC¶¶ 165-67, 206, 213. Drawing all inferences in Ocimum's favor, A&GC's ongoing commercialization of GenesWell BCT is plausible active misappropriation whether or not A&GC currently possess an identical copy of Ocimum's Oncology Datasuite. *Oakwood* leaves no doubt on this issue. 999 F.3d at 910.

Ocimum also disagrees with the Recommendation's finding on A&GC's knowledge of misappropriation. Ocimum plausibly pleads in paragraphs 177-184 of the SAC that information disclosed in the patents was sufficient to put A&GC on notice of their misappropriation before December 5, 2019. The Recommendation rejected these facts as a matter of law.[1] But knowledge may be met constructively. *See* 6 Del C. § 2001(2)(b)(2); 18 U.S.C. § 1839(5)(A). It would be inconsistent to find that the same language that supposedly puts Ocimum on notice of its claims does not likewise put A&GC on notice of their misappropriation. Regardless, A&GC had knowledge of misappropriation by December 5, 2019. Recommendation at 30-31. But the Recommendation at 31 states that the SAC "does *not* sufficiently explain what *post-December 5, 2019 actions* either Abion or Gencurix took, after gaining this knowledge, that would amount to

---

[1] What constitutes a reasonably diligent inquiry and what a person should have known from such an inquiry are classic issues of fact that cannot be resolved on a motion to dismiss. A reasonable jury could find that A&GC should have inquired what rights, if any, the assignors had to transfer Ocimum's trade secrets. This is a fact question for a jury to decide. *See Computer Assoc. v. Altai, Inc.*, 982 F.2d 693, 718-19 (2nd Cir. 1992); *M2M Solutions LLC v. Motorola Solutions, Inc.*, 2016 WL 70814 at *12 (D. Del. Jan. 6, 2016); *Baxter Healthcare Corp. v. HQ Specialty Pharma Corp.*, 157 F.Supp.3d 407, 426 (D.N.J. 2016).

trade secret misappropriation ….." But paragraph 15 alleges as follows (emphasis added):

> 15. Defendants Abion and Gencurix have filed U.S. patent applications 15/582,330 and 16/129,206 which, as detailed herein, are based on Defendants' misuse and illegal possession of Plaintiffs' confidential and proprietary information … *Abion and Gencurix continue to prosecute these patents, having received an office action for patent application number 16/129,206 from the USPTO on or about February 19, 2021*.

Based on an overly narrow interpretation of "use," the Recommendation (p. 31, fn. 27) found this paragraph did not show misappropriation after December 5, 2019. But paragraph 15 states that A&GC "continue to prosecute" the '206 application in *February 2021*. These allegations are supported by public USPTO records showing that A&GC were prosecuting the '206 application in 2020 and 2021. (Ex. 1). With each new patent, A&GC obtain *new patent claims* that protect GenesWell BCT from competition in the United States – a clear competitive advantage. In further support of Paragraph 15, USPTO records show that A&GC paid maintenance fees for U.S. Patent No. 9,639,660 on *September 25, 2020*, (Ex. 2), which is another offending patent identified in the SAC (¶122). Prosecuting patents based on Ocimum's trade secrets is trade secret misappropriation. *Altavion, Inc. v. Konica Minolta Sys.*, 226 Cal.App.4th 26, 66 (Cal. App. 2014) ("When KMSL … obtained patents covering Altavion's ideas, it was a classic violation of trade secret law."); *Bohnsack v. Varco*, 668 F.3d 262, 279-80 (5th Cir. 2012) ("Any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant is a 'use' under this Section … a reasonable juror could infer that Varco's act of filing a patent application to the Pit Bull was 'likely to result in injury to the trade secret owner' …."). In *Altavion*, the appeals court noted, as found by the trial court, that "*at the very least*, [11 specified patents and patent applications] disclose or use a trade secret (or component part of a trade secret) of Altavion." There is no doubt that A&GC's patents use at least part of Ocimum's trade secrets to create GenesWell BCT. D.I. 107 at 14-15. By so doing, A&GC "[took]

5

advantage of [Ocimum's] trade secret information to obtain an economic benefit, competitive advantage, or other commercial value" after having knowledge of Ocimum's claims. *Oakwood* 999 F.3d at 910. Even if A&GC obtained some patents before enactment of DTSA, this fact is irrelevant. The Third Circuit in *Oakwood* and other decisions in this circuit uniformly hold that misappropriation commencing before and continuing after enactment of DTSA is actionable.[2]

Further, paragraph 185 of the SAC, which is referenced in Ocimum's briefing but not properly credited in the Recommendation, alleges that A&GC are "seeking and obtaining trademark protection for GenesWell BCT, preparing to file and/or filing for 510k marketing approval for Genes Well BCT with the USFDA, seeking 510k marketing approval with the USFDA, maintaining United States patents that rely on Ocimum's trade secrets, and prosecuting and seeking additional U.S. patents that rely on Ocimum's trade secrets." Patents obtained by A&GC after they had knowledge of Ocimum's claims give A&GC time to get USFDA approval for GenesWell BCT without the threat of U.S. competition – another competitive advantage.

The SAC further pleads that A&GC are taking *active and ongoing steps* to bring GenesWell BCT to the U.S. market. SAC ¶¶161-176, 185. These allegations are based in part on a presentation from Gencurix, (Ex. 3), stating that a "Commercialization Strategy" for GenesWell BCT is to "[m]aximize commercial value by US FDA 510(k) clearance." Thus, the SAC alleges (¶¶161-176, 185) that A&GC actively are commercializing and taking steps to further commercialize GenesWell BCT in the United States. This must be accepted as true, and is plausible misappropriation under *Oakwood*. 999 F.3d at 909 ("[M]arketing goods that embody

---

[2] 999 F.3d at 908 n.16; *see also Flexible Techs. v. Sharkninja Oper. LLC*, 2019 WL 1417465 at *4 (D. Del. March 29, 2019); *PDC Machines Inc. v. Nel Hydrogen A/S*, 2018 WL 3008531 at *3 (E.D. Pa. June 15, 2018); *Teva Pharm. USA, Inc. v. Sandhu*, 291 F. Supp. 3d 659, 675 (E.D. Pa. 2018); *Brand Energy & Infrastructure Servs. v. Irex Contracting Grp.*, 2017 WL 1105648 (E.D. Pa. Mar. 24, 2017).

6

the trade secret, employing the trade secret in manufacturing or production, relying on the trade secret to assist or accelerate research or development, or soliciting customers through the use of information that is a trade secret ... all constitute 'use.'").

DTSA covers misappropriation even where it occurs outside the United States. 18 U.S.C § 1837(2) (stating that DTSA "applies to conduct occurring outside the United States if … an act in furtherance of the offense was committed in the United States"); *see also Motorola Solutions, Inc. v. Hytera Comm'n Corp*., 436 F.Supp.3d 1150, 1165 (N.D. Ill. Jan. 31, 2020) ("[I]f Plaintiffs have shown that Defendants have taken actions that 'manifest that the offense is at work' – the offense being the misappropriation – then Section 1837 has been satisfied and the chapter also applies to acts occurring outside the United States."). All that is required under DTSA is that "an act in furtherance of the offense was committed in the United States." *Motorola*, 436 F.Supp.3d. at 1162 ("Section 1837 does require a nexus to the United States before the DTSA applies extraterritoriality."). Here, the SAC amply pleads numerous acts committed in the United States (*e.g*., patents and trademarks being obtained from the USPTO, and an application being filed with the USFDA) that are in furtherance of A&GC's foreign misappropriation (*e.g*., research, development, and sales of GenesWell BCT outside the United States). Indeed, as alleged in ¶185 of the SAC and admitted by A&GC (Ex. 3), entering the U.S. market is part of an overall, *ongoing* marketing strategy for GenesWell BCT.

Citing Gencurix's website, the trademark statement of use filed with the USPTO avers that GenesWell BCT is "now" in use in commerce in the United States and has been since at least January 3, 2017. Ex. 4 at PDF page 5. It reasonably can be inferred that GenesWell BCT itself or services associated with it remain available in U.S. commerce still today via at least the same website Gencurix provided to the USPTO. There is no basis for a contrary finding at the

7

pleading stage. *Oakwood,* 999 F.3d at 910 ("Avoiding a cramped definition of 'use' is also consistent with giving trade secret owners a fair opportunity to prove misappropriation. The implication of use, especially at the pleading stage, can flow from circumstantial evidence alone."). All counts against A&GC should proceed forward for these reasons alone.

*Second*, regarding A&GC's motion to dismiss for lack of personal jurisdiction, footnote 31 of the Recommendation states that "[w]ere Plaintiffs to have pleaded facts that clearly and understandably set out how these Defendants committed a post-December 5, 2019 act of trade secret misappropriation, ***either by 'using' the trade secrets at issue in some way as to prosecution or assertion of the '206 application***, the '561 patent and/or the '660 patent, or by doing so via Gencurix's development or marketing of GenesWell BCT in the United States, then it might be that Rule 4(k)(2) jurisdiction would exist." As detailed above, paragraphs 15 and 185 plead that A&GC were prosecuting the '206 application before the USPTO in 2020 and 2021. The SAC further plausibly pleads that A&GC are actively (today) promoting their GenesWell BCT product on their website, actively (today) making GenesWell BCT available to U.S. customers, and actively (today) identifying their offending U.S. patents as protecting GenesWell BCT from competing products in the United States. SAC ¶¶132-85. DTSA "applies to conduct occurring outside the United States if … an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2); *see also Motorola*, 436 F.Supp.3d at 1165.

Here, A&GC's research, development and sales of GenesWell BCT outside the United States is furthered by patents obtained in the United States that rely upon Ocimum's trade secrets, by U.S. trademarks obtained in the United States, by ongoing commercialization efforts in the United States, and by A&GC seeking USFDA approval to market and sell GenesWell BCT in the United States. This is actionable misappropriation under *Oakwood*. Indeed, it is hard

8

to imagine how A&GC's past and *ongoing* activities before the USPTO and the USFDA – both United States government agencies – are not directed towards the United States. *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009) ("It stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States."); *Lismont v. Alexander Binzel Corp.*, 2013 WL 6095461 (E.D. Va. Nov. 18, 2013). This Court has personal jurisdiction over A&GC.

B.   THE RECOMMENDATION ERRS IN DISMISSING COUNT 3 AGAINST LGC

*Third*, the Recommendation at pages 32-33 errs in dismissing Count 3 of the SAC against LGC. The Recommendation states that Ocimum has failed to "provide any specific factual allegation of exactly what post-May 11, 2016 acts LG Chem is said to have taken to misuse Plaintiffs alleged trade secrets." But paragraphs 15, 132, 144 and 193 of the SAC tie Dr. Sang Seok Koh, a current or former LGC employee, to transfer of the offending patents to A&GC. Public USPTO records show that Dr. Koh assigned the offending patent applications to A&GC on June 21, 2018; that assignment was recorded at the USPTO on September 12, 2018. (Exs. 5-6). The Recommendation at pages 12-13 and 33 finds that LGC is not responsible for the actions of Dr. Koh. ████████████████████████████████████████ LGC responsible for acts of its employees, with no distinction between current and former employees, that had access to Ocimum's trade secrets: ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████ For Dr. Koh and others to be able to assign the offending patents to A&GC in 2018, LGC plausibly fell well short of this standard of care, as Ocimum has pled. SAC ¶189 ("Had LG Chem complied with its contractual obligations, neither Defendants nor

9

their third-party collaborators, including Abion and Gencurix, would have had access to Plaintiffs' proprietary information after December 31, 2002."). In fact, Dr. Koh was one of the main persons that communicated with GeneLogic (now Ocimum) while the 2000 Agreement was in force. SAC ¶¶15, 29-31, 26 (GeneLogic termination letter sent to Dr. Koh).

The SAC also plausibly alleges that LGC *currently* is selling drugs developed using Ocimum's trade secrets (SAC ¶¶10-12), that LGC created a new database called the Cancer Genome Expression Database of LG Life Sciences that incorporates Ocimum's trade secret genomic data (SAC ¶130), and either in this database or elsewhere, LGC *continues* to possess data that came from Ocimum's Oncology Datasuite (SAC ¶¶90, 124, 191). To find otherwise is to infer, contrary to the SAC, that LGC – a company still engaged in genomic research – destroyed Ocimum's valuable genomic data at some *unknown* time in the past. But reasonable inferences must be drawn in Ocimum's favor, not LGC's. Even if committed in Korea, these are further allegations of misappropriation under *Oakwood* that are actionable under 18 U.S.C § 1837(2). *Oakwood*, 999 F.3d at 909-10; *Motorola*, 436 F.Supp.3d at 1166 ("Plaintiffs thus may argue for extraterritorial damages resulting from the misappropriation…."). LGC's misappropriation abroad is made possible by its failure to return the Oncology Datasuite in the United States; the required DTSA nexus. The SAC provides factual allegations of misappropriation by LGC after May 11, 2016. The dismissal of Count 3 should not be adopted.[3]

**WHEREFORE**, Ocimum respectfully requests that this Court not adopt the dismissal of Counts 2 and 3 against A&GC or the dismissal of Count 3 against LGC. All counts against A&GC (Counts 2-3) and LGC (Counts 1-3) should proceed forward.

---

[3] The Recommendation also found no allegations of breach of contract (Count 1) after December 5, 2016, which is inaccurate as detailed above.

Dated: August 15, 2022

| | |
|---|---|
| *Of Counsel* <br> C. Edward Polk. Jr. <br> Polk Law PLLC <br> 43252 HATTONTOWN WOODS TER <br> Ashburn, Virginia 20148 <br> 703-989-5397 <br> 703-729-POLK (fax) <br> epolk@polklawpllc.com <br><br> CHINTAPALLI LAW FIRM, PLLC <br> Satish Chintapalli <br> 150 Wrenn Drive #1081 <br> Cary, NC 27512 <br> 919-443-5504 <br> 888-316-9071 (fax) <br> satish@chintapallilaw.com | **CROSS & SIMON, LLC** <br><br> */s/ Christopher P. Simon* <br> Christopher P. Simon (No. 3697) <br> Kevin S. Mann (No. 4576) <br> 1105 North Market Street, Suite 901 <br> Wilmington, Delaware 19801 <br> 302-777-4200 <br> 302-777-4224 (fax) <br> csimon@crosslaw.com <br> kmann@crosslaw.com <br><br> *Attorneys for Plaintiffs* |

11