**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OCIMUM BIOSOLUTIONS (INDIA) LIMITED AND DON A. BESKRONE, CHAPTER 7 TRUSTEE OF OCIMUM BIOSOLUTIONS INC., | ) ) ) ) | C.A. No. 19-2227-JHS |
| | ) | |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | **PUBLIC VERSION** |
| LG CHEM, LTD, ABION, INC. and GENCURIX, INC., | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT LG CHEMICAL LTD.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO COMPEL</u>**

OF COUNSEL:

Jamaica P. Szeliga
Elissa Brockbank Reese
Susan M. Sajadi
POTOMAC LAW GROUP, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006

Susan V. Metcalfe
Eliza Hall
POTOMAC LAW GROUP, PLLC
630 Freedom Business Center Drive, Floor 3
King of Prussia, PA 19406

David E. Moore (#3983)
Bindu A. Palapura (#5370)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant LG Chem, Ltd.*

Dated: June 5, 2026
12963774 / 20212.00002
PUBLIC VERSION
Dated: June 12, 2026

## TABLE OF CONTENTS

I.    FACTUAL BACKGROUND ................................................................................................ 1

      A. Ocimum Produces Hard-Copy Documents to LGC Without Raising Any
         Privilege Claim, and LGC Returns Them ................................................................ 2

██████████████████████████

      C. Ocimum Belatedly Reviews the Documents and Raises Privilege Issues for the First
         Time Almost Six Months After Producing the Documents to LGC ........................... 4

      D. Ocimum Provides Two Clawback Lists that Do Not Comply with the Parties' Protective
         Order ........................................................................................................................ 5

      E. Seven and a Half Months After Production, Ocimum Provides a Privilege Log that Is
         Not Only Deficient, but Omits Certain Previously Identified Clawback Documents and
         Added Others ............................................................................................................ 6

      F. In May, Ocimum's Counsel Raises, for the First Time, a Claim that the Clawback
         Documents Were *Not* Produced to AstraZeneca and Production Was "Inadvertent" ....... 7

      G. Ocimum Sends A Second Deficient Privilege Log .................................................. 8

II.   LEGAL STANDARD ....................................................................................................... 9

III.  ARGUMENT ................................................................................................................. 11

      A. Ocimum Has Failed to Establish that the Documents are Privileged ........................ 11

         1. Any Privilege Was Already Waived by Ocimum's
            Failure to Object to the 2017 Production of These Documents to AstraZeneca ......... 11

         2. Ocimum's Privilege Claims Are Grossly Deficient ......................................... 12

      B. Even Without Considering the Prior Production to AstraZeneca, Under Rule 502(b)
         Ocimum Has Waived Any Privilege Here ............................................................... 15

         1. Ocimum Has Not Met and Cannot Meet the Rule 502(b) Standard ..................... 15

IV.   CONCLUSION ............................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*10x Genomics, Inc. v. Celsee, Inc.*,
    505 F. Supp. 3d 334 (D. Del. 2020)...................................................................................9

*D'Onofrio v. Borough of Seaside Park*,
    No. CIV.A. 09-6220, 2012 WL 1949854 (D.N.J. May 30, 2012)...........................................18

*ECB USA, Inc. v. Savencia, S.A.*,
    Civ. A. No. 19-731-GBW-CJB, 2024 WL 406437 (D. Del. Jan. 31, 2024)............................18

*ePlus, Inc. v. Lawson Software, Inc.*,
    280 F.R.D. 247 (E.D. Va. 2012) .......................................................................................13

*Gloucester Twp. Hous. Auth. v. Franklin Square Assocs.*,
    38 F. Supp. 3d 492 (D.N.J. 2014) ............................................................................. 10-11, 19

*Hawkins v. Stables*,
    148 F.3d 379 (4th Cir. 1998) ...........................................................................................10

*M & G Polymers USA, LLC v. Carestream Health, Inc.*,
    No. CIV.A.07C-11-242PLA, 2010 WL 1611042 (Del. Super. Ct. Apr. 21, 2010), aff'd sub
    nom. *Carestream Health, Inc. v. M&G Polymers USA, LLC*, 9 A.3d 475 (Del. 2010)...........12

*Magnetar Technologies Corp. v. Six Flags Theme Park, Inc.*,
    886 F. Supp. 466 (D. Del. 2012).................................................................... 10-11, 15-16

*Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*,
    914 F.Supp. 1172 (E.D. Pa. 1996) ..............................................................................10, 13

*Montgomery Cnty. v. MicroVote Corp.*,
    175 F.3d 296 (3d Cir. 1999)..............................................................................................10

*Morales v. Sunpath Ltd.*,
    No. CV 20-1376-JLH-SRF, 2024 WL 1556713 (D. Del. Apr. 10, 2024) ..............................12

*Nesselrotte v. Allegheny Energy, Inc.*,
    Civ. No. 06-1390 (W.D. Pa. May 6, 2008)...........................................................................18

*Ocimum BioSolutions (India) Ltd. v. AstraZeneca UK Ltd.*,
    C.A. No. N15C-08-168 (Del. Sup. Ct. 2015) .......................................................................1

*Peterson v. Bernardi*,
    262 F.R.D. 424 (D.N.J. 2009)............................................................................................10

ii

*Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*,
    254 F.R.D. 216 (E.D. Pa.), order clarified, 254 F.R.D. 238 (E.D. Pa. 2008) .....................10, 12

*Trammel v. United States*,
    445 U.S. 40 (1980).................................................................................................9, 10

*Union Pac. Res. Grp., Inc. v. Pennzoil Co.*,
    No. 1:97-MC-64 JJF, 1997 WL 34655410 (D. Del. Aug. 12, 1997)........................... 10, 12-14

*United States v. Sensient Colors, Inc.*,
    Civ. No. 07-1275, 2009 WL 2905474 (D.N.J. Sept. 9, 2009) ..................................................16

*Wise v. Washington Cnty.*,
    No. CIV.A. 10-1677, 2013 WL 4829227 (W.D. Pa. Sept. 10, 2013).......................... 15, 17-18

STATUTES AND RULES

Federal Rule of Civil Procedure 37(a)(1), 37(a)(3)(b)(iv)................................................................1

Federal Rule of Civil Procedure 26(b)(5)(B)..........................................................................11, 15

Federal Rule of Civil Procedure 26(b)(5) ....................................................................................13

Fed. R. Evid. 502 ..........................................................................................................................1

Fed. R. Evid. 502(b)..........................................................................................................10, 15, 17

Defendant LG Chemical, Ltd. ("LGC"), pursuant to Fed. R. Civ. P. 37(a)(1), 37(a)(3)(b)(iv) and Fed. R. Evid. 502, respectfully moves this Court for an order compelling Plaintiffs Ocimum Biosolutions (India) Ltd. and Don A. Beskrone, Chapter 7 Trustee of Ocimum Biosolutions, Inc. (collectively "Ocimum" or "Plaintiffs"), to produce the documents that are the subject of Ocimum's clawback requests, for the reasons set forth below.

## I.    FACTUAL BACKGROUND

This Motion concerns Ocimum's request to claw back documents from nine banker's boxes of hard-copy documents that were apparently produced in or about October of 2017 to AstraZeneca, the defendant in the lawsuit Ocimum filed at *Ocimum BioSolutions (India) Ltd. v. AstraZeneca UK Ltd.*, C.A. No. N15C-08-168 (Del. Sup. Ct. 2015) (the "AstraZeneca Litigation"). *See* **Exhibit 1** (June 5, 2026 Declaration of Jamaica Szeliga ("Szeliga Dec.") at ¶¶ 5-6. On September 12, 2017, AstraZeneca issued subpoenas to the following third parties: Venable LLP (counsel for GeneLogic, Inc. ("GeneLogic") during the negotiation and signing of the 2007 purchase by Ocimum of some of GeneLogic's assets (the "2007 Asset Acquisition")); Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Baker Donelson"), counsel for Ocimum during the 2007 Asset Acquisition; Ore Pharmaceuticals, Inc. and Ore Holdings, Inc. (collectively "Ore"), GeneLogic's successors; and Aquilo Partners, LLC ("Aquilo"), GeneLogic's investment bank. *Id.* at ¶¶ 6-7 & exhibits B1 through B-4 thereto.

These subpoenas sought, *inter alia*, documents "mentioning, concerning, referring and/or relating to the 2007 sale of assets, including the 2007 [Asset Purchase Agreement], from Gene Logic to Ocimum[,]" and they ordered production of same at the office of AstraZeneca's counsel, McCarter & English, LLP. *Id.* at ¶¶ 8, 9. The AstraZeneca Litigation docket does not reflect any challenges to these subpoenas by Ocimum or any recipient of the subpoenas. *Id.* at ¶ 10.

It appears that after Ocimum lost the AstraZeneca Litigation in or about 2020, AstraZeneca returned the boxes of documents to Ocimum's local counsel, Mr. Mann, in whose possession they remained until 2025, when Ocimum produced them to LGC here. Of note, Mr. Polk, Mr. Chintapalli and Mr. Mann, who currently serve as Ocimum's counsel in this case, also served as Ocimum's counsel during the AstraZeneca Litigation.[1]

**A. Ocimum Produces Hard-Copy Documents to LGC Without Raising Any Privilege Claim, and LGC Returns Them**

In or about June of 2025, four years after the AstraZeneca Litigation ended, LGC's counsel learned that  hard-copy documents concerning the 2007 Asset Acquisition had been produced to AstraZeneca and were in the possession of Ocimum's local Delaware counsel. *Id.* at ¶¶ 4-5. LGC's counsel thus coordinated with Ocimum's counsel to arrange for their production to LGC for scanning by LGC's e-discovery vendor. *Id.* at ¶¶ 11-14.[2] On August 21, 2025, Ocimum's local counsel gave nine boxes of documents to LGC's vendor. *Id.*

At no point in that process did Ocimum suggest that any of the documents might be privileged. *Id.* at ¶ 14. To the contrary, Ocimum's counsel handed over all nine boxes without raising any privilege issues. *See id.* at ¶¶ 12-14. In an August 21, 2025 email, Ocimum's local counsel Kevin Mann helpfully told LGC's counsel, "[t]here are 9 bankers' boxes, so make sure that the courier brings a hand cart." *Id.* at ¶ 12. Later that same day, LGC's vendor traveled to Mr. Mann's office and was given the nine boxes. *Id.* at ¶ 13. Based on the previous production to

---

[1] All three attorneys were counsel of record well before the issuance of the September 2017 subpoenas. The AstraZeneca Litigation docket reflects that Mr. Mann entered his appearance in November 2015 while Mr. Polk and Mr. Chintapalli were admitted pro hac vice in, respectively, February of 2016 and March of 2017. *See* AstraZeneca docket entry nos. 4, 33-37 & 132-37.

[2] Because the documents related to the 2007 Asset Acquisition, counsel sometimes colloquially referred to them as the "merger documents." *See*, *e.g.*, *id.* at ¶ 21 (citing 1/27/26 Szeliga email).

2

AstraZeneca, LGC understood that any privileges that may have once pertained to these documents had long since been waived. *See, e.g., id.* at ¶ 50.

The boxes contained a total of 1,479 documents. *Id.* at ¶ 16. Over the next month, LGC's vendor scanned them and uploaded them to a password-protected database for LGC's review. *Id.* at ¶ 15. LGC's vendor organized them into nine folders – namely, 1A, 1B, 2A, 2B, 3, 4, 5, 6 and 7 – in order to identify which documents came from which boxes. *Id.* at ¶ 15. On October 1, 2026, LGC's vendor returned the boxes of documents to the office of Ocimum's local counsel, and Ocimum's local counsel Mr. Mann acknowledged receipt. *Id.* at ¶ 17.



3

**C.** **Ocimum Belatedly Reviews the Documents and Raises Privilege Issues for the First Time Almost Six Months After Producing the Documents to LGC**

On February 9, 2026, as a courtesy, LGC's counsel Ms. Szeliga sent Ocimum's counsel a password-protected link to the full set of these documents that LGC's vendor had scanned at LGC's expense. *Id.* at ¶ 22. This email apparently prompted Ocimum's counsel to finally review the documents that they had produced to LGC almost six months earlier. On February 17, 2026, Ocimum's counsel Mr. Chintapalli sent an email in which he claimed:

> It has come to our attention that the production contains scans of documents that appear to have came [*sic*] from boxes that were marked as containing privileged documents. We are in the process of reviewing LG's production of the scanned documents and will create a list of documents that we are clawing back….

*Id.* at ¶ 23. Mr. Chintapalli also stated: "To the extent that LG still has the boxes with the paper documents that it collected earlier… please promptly return all hard copy documents back to" Ocimum's local counsel. *Id.* Thus, he appeared to be unsure about where the boxes of documents even were and unaware that LGC had returned them to Ocimum almost five months earlier.

On February 18, 2026, Ocimum's counsel Mr. Polk sent a follow-up email alleging that "one or more of the boxes picked up by your carrier were labeled as privileged. These were mistakenly taken by your vendor…." *Id.* at ¶ 24. Mr. Polk, too, appeared to be unaware that LGC had returned the documents almost five months earlier. *See id.* (Mr. Polk's email states, "Given the time these boxes have been in LGC counsel's possession…please confirm that none of LGC's counsel has reviewed these privileged documents."). Indeed, despite having discussed with LGC's counsel his recollection that these documents had previously been produced to AstraZeneca, Mr. Polk went so far as to accuse LGC's counsel of potentially violating the Delaware Rules of Professional Conduct for having "not previously alerted us to this issue" of there being potentially privileged documents in the boxes. *Id.*

4

LGC's counsel responded on February 18, 2026, explaining that Ocimum's local counsel had provided "the boxes of documents that you said we could review and scan"; that LGC had already returned the boxes on October 1, 2025; and that LGC had "no idea which documents you are referring to (and no way of knowing) since you/Kevin [Mann] have all the boxes." *Id.* at ¶ 25. LGC's counsel also asked that Ocimum identify the documents they sought to claw back. *Id.*

**D. Ocimum Provides Two Clawback Lists that Do Not Comply with the Parties' Protective Order**

The Protective Order in this case requires that a party seeking to claw back documents must "promptly notify[] the recipient(s) upon knowledge of the inadvertently or unintentionally produced documents and provid[e] a privilege log for the inadvertently or unintentionally produced documents…." *Id.* at ¶ 28 (citing D.I. 218 at ¶ 10). Ocimum, however, sent LGC two "claw back lists" in February 2026 (the "February Clawback Lists") without providing privilege logs. Indeed, Ocimum did not describe the documents in any way other than simply listing their numbers, nor did Ocimum even identify which privilege(s) allegedly applied.

Specifically, on the evening of February 18, 2026, Ocimum counsel Satish Chintapalli sent what he described as "an initial… claw back list." *Id.* at ¶ 26. This list (the "2/18/26 Clawback List") consisted of an Excel spreadsheet with a single column listing ▮ "Control Numbers." *Id.* at ¶ 27. Ocimum did not provide any other information about any of the documents, nor did it state which privilege(s) allegedly applied to each document. *Id.* Despite Ocimum's failure to comply with the Protective Order, LGC directed its vendor to sequester the documents corresponding to the list of control numbers. *Id.* at ¶ 32.

On February 27, 2026, Mr. Chintapalli sent another Excel spreadsheet containing nothing but a list of ▮ "control numbers" – the original ▮ numbers, plus ▮ more – but again, without any document descriptions or identified privileges. *Id.* at ¶ 33-34. When questioned on this, Mr.

5

Chintapalli stated that he expected to provide the privilege log for these ▮ documents by April 1, 2026. *Id.* at ¶¶ 37-38. Again, despite Ocimum's lack of compliance with the Protective Order, LGC had its vendor sequester the documents identified. *Id.* at ¶ 36.

### E. Seven and a Half Months After Production, Ocimum Provides a Privilege Log that Is Not Only Deficient, but Omits Certain Previously Identified Clawback Documents and Added Others

On April 9, 2026, after a further reminder from LGC, Mr. Chintapalli finally sent a privilege log (the "4/9/26 Privilege Log"). *Id.* at ¶¶ 39-41. However, LGC immediately realized that **Ocimum's 4/9/26 Privilege Log did not cover the same ▮ documents that Ocimum had identified on its February Clawback Lists**; rather, it only included ▮ documents, of which only half were from the February Clawback Lists; the remainder were new. *Id.* at ¶ 40.

In attempting to determine the scope of the changes to Ocimum's clawback request, LGC further realized that Ocimum's February Clawback Lists had also misidentified the documents. The 4/9/26 Privilege Log described, for the first time, the nature and contents of the documents (rather than just listing each by a "control number"). The documents bearing the "control numbers" Ocimum had listed did not fit the descriptions of each document on the 4/9/26 Privilege Log. *Id.* at ¶ 47. Instead, the numbers listed on Ocimum's February Clawback Lists were not the documents' control numbers, as Ocimum had stated, but their bates numbers.

Simply put, **Ocimum did not correctly identify the documents it sought to claw back until April 9, 2026,** *seven and a half months* after Ocimum had produced the hard-copy documents to LGC, more than six months after LGC had returned the documents to Ocimum, and nearly two months after Ocimum first notified LGC that Ocimum intended to claw back certain documents. *Id.* at ¶¶ 42-44. Worse yet, as detailed in Section III(A)(2) below, the 4/9/26 Privilege Log contained dozens of privilege claims that were incorrect or insufficient on their face. For example, Ocimum claimed attorney-client privilege for ▮ documents that had no recipient

6

identified – in other words, either the attorney or the client half of the equation was missing -- and

███ more for which no individual author was named, with Ocimum claiming privilege

apparently on a self-serving assumption that the unidentified author must be a lawyer. *Id.* at ¶ 49.

F.   **In May, Ocimum's Counsel Raises, for the First Time, a Claim that the Clawback Documents Were *Not* Produced to AstraZeneca and Production Was "Inadvertent"**

On May 5, 2026, LGC reached out to Ocimum by email to explain the bases for this Motion

and arrange a meet-and-confer. *Id.* at ¶ 50. One of the bases that LGC identified was LGC's

understanding that any privilege in these documents had been waived by their production to

AstraZeneca. *Id.* In response, Ocimum alleged for the first time that "the documents that Ocimum

is seeking to claw back were not produced to AstraZeneca's counsel." *Id.* at ¶ 51 (quoting May 5,

2026 responsive email from Ocimum's local counsel, Mr. Mann). Rather, Mr. Mann claimed, these

documents "had been removed [from the boxes] prior to production to AstraZeneca and then put

back into the boxes after the boxes were returned to my office. We inadvertently did not remove

them again prior to giving the boxes to your Delaware counsel." *Id.*

By the time Mr. Mann sent his May 5, 2026 email, however, Ocimum's list of documents

to be clawed back had changed repeatedly. That is, Ocimum had served LGC with three different

clawback lists of documents, the two February Lists (respectively ██ and ██ documents) and

the 4/9/26 Privilege Log (omitting over half of the February documents and adding █ new ones).

*Id.* at ¶ 41. Because the universe of alleged privileged documents at issue was in flux, it was unclear

which documents Mr. Mann had allegedly removed from the boxes prior to production to

AstraZeneca. Accordingly, **LGC sent Mr. Mann an email asking for a copy of the privilege log**

that Ocimum had served in the AstraZeneca Litigation, so that LGC could confirm whether any or

all of the ██ documents on the 4/9/26 Privilege Log had, in fact, previously been withheld from

7

the production to AstraZeneca. *Id.* at ¶ 52. Ocimum, however, has to date not provided any such privilege log nor provided any explanation as to why no such log is forthcoming. *Id.* at ¶ 53.

The locations of the clawback documents within the banker's boxes also raise questions about the factual basis for Ocimum's claim that these documents were withheld from AstraZeneca on privilege grounds "and then put back into the boxes" after that litigation. *See id.* at ¶ 51. The ▮documents that Ocimum identified on its 4/9/26 Privilege Log were *scattered* across ▮ of the nine banker's boxes. *Id.* at ¶ 46. It is thus clear that Ocimum had not previously identified the allegedly privileged documents and maintained them together (*e.g.*, in a Redweld within a box or within a separate box), even though doing so would have not only provided additional protection against inadvertent disclosure, but also would have spared Ocimum's counsel of the need to review these nine boxes for privilege all over again each time a new defendant was sued by Ocimum (*e.g.*, AstraZeneca, LGC, Prestige).

### G. Ocimum Sends A Second Deficient Privilege Log

On May 21, 2026, counsel for LGC and Ocimum held their meet-and-confer for the present Motion. *Id.* at ¶¶ 55-56. Ocimum's counsel, Mr. Polk, shared that some of the nine boxes of documents were produced by Venable, the law firm that represented nonparty GeneLogic, and that it was his understanding Venable produced them in or about 2017 in response to a subpoena from AstraZeneca. *Id.* at ¶ 56(a) & (b). He was not, however, in a position to identify which boxes had been produced by Venable and which had not. *See id.* at ¶ 56(a). Moreover, while he claimed that at least some of the nine boxes were marked privileged, he could not identify which ones allegedly were.[3] *Id.* at ¶ 56(d). Mr. Polk also stated that Mr. Chintapalli created Ocimum's 4/9/26 Privilege

---

[3] None of the nine boxes produced to LGC contained only allegedly privileged documents. The clawback documents were sprinkled across ▮ different boxes.

Log, and that he did so without benefit of seeing the boxes or the physical documents, reviewing only the digital copies LGC had provided. *Id.* at ¶ 56(e) & (f).

Counsel for the parties were able to reach agreement that Ocimum could not properly assert privilege over communications between GeneLogic and its counsel. *Id.* at ¶ 57(a). Counsel also agreed that Ocimum could not assert privilege in documents that came from boxes produced by Venable, including any Ocimum documents in Venable's possession, since Venable was counsel for a party adverse to Ocimum at that time. *Id.* at ¶ 57(b).

One week after this meet-and-confer, Ocimum's counsel sent a new privilege log (the "5/28/26 Privilege Log"), which reduced the number of clawback documents from ▮ to ▮ by relinquishing privilege claims over communications between Venable and GeneLogic. *Id.* at ¶ 58. However, it does not appear that any change was made to reflect the parties' agreement that all Ocimum documents in Venable's possession would not be privileged. *Id.* Moreover, the 5/28/26 Privilege Log suffers from many of the same deficiencies as the 4/9/26 Privilege Log. *Id.* at ¶ 59. For instance, for more than half of the documents on the 5/28/26 Privilege Log, Ocimum continues to assert the attorney-client privilege despite the fact that Ocimum does not identify any individual author and/or recipient. *Id.* at ¶ 59(b) & (c).

## II.    LEGAL STANDARD

"Because the [attorney-client] privilege 'obstructs the truth-finding process, it is construed narrowly,' and 'caution must be exercised to ensure that the privilege is contained within appropriate boundaries.'" *10x Genomics, Inc. v. Celsee, Inc.*, 505 F. Supp. 3d 334, 337 (D. Del. 2020) (quoting *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423 (3d Cir. 1991) and *Union Carbide Corp. v. Dow Chemical Co.*, 619 F. Supp. 1036, 1046 (D. Del. 1985)); *see also Trammel v. United States*, 445 U.S. 40, 50 (1980) ("Testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's

9

evidence.'"… As such, they must be strictly construed…") (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950)); *see also*, *e.g.*, *Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) (privileges should be "recognized 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.'") (citing *Trammel*, 445 U.S. at 50). In addition, "[t]he party seeking to invoke the attorney-client privilege has the burden of establishing the existence of an attorney-client relationship and the confidential nature of the communication." *Magnetar Technologies Corp. v. Six Flags Theme Park, Inc.*, 886 F. Supp. 466, 478 (D. Del. 2012).

Even when privilege applies, it can be waived. "Generally, disclosure of privileged information operates as a waiver of privilege." *Gloucester Twp. Hous. Auth. v. Franklin Square Assocs.*, 38 F. Supp. 3d 492, 496-97 (D.N.J. 2014); *see also Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999). Similarly, "failure to assert a privilege properly may amount to a waiver of that privilege." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 914 F.Supp. 1172, 1178 (E.D. Pa. 1996). To avoid waiver, the assertion of privilege must be timely and sufficient to enable the opposing party "to determine whether it can or should" oppose the privilege claim. *Union Pac. Res. Grp., Inc. v. Pennzoil Co.*, No. 1:97-MC-64 JJF, 1997 WL 34655410, at *1 (D. Del. Aug. 12, 1997) (granting motion to compel production of documents identified on privilege log); *Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 221 (E.D. Pa.), *order clarified,* 254 F.R.D. 238 (E.D. Pa. 2008) (articulating the standard).

Where a party seeks to claw back inadvertently produced privileged documents, "a two-step analysis must be done. First, it must be determined if the documents in question are privileged…. Second, if [the party shows they are privileged], then the three elements of FRE 502(b) must be satisfied." *Peterson v. Bernardi*, 262 F.R.D. 424, 427 (D.N.J. 2009). Those

10

elements are: (1) the disclosure [was] inadvertent; (2) the holder of the privilege… took reasonable steps to prevent disclosure; and (3) the holder promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B).  The party seeking to claw back the documents bears the burden of showing that all three of these requirements have been met. *Gloucester Twp.*, 38 F. Supp. 3d at 497.

### III.    <u>ARGUMENT</u>

### A.  <u>Ocimum Has Failed to Establish that the Documents are Privileged</u>

Ocimum has the burden of establishing that the documents at issue are privileged. *See*, *e.g.*, *Magnetar*, 886 F. Supp. at 478. Ocimum cannot do so here for at least two reasons. ***First***, these documents were produced by third parties to AstraZeneca in response to subpoenas that Ocimum did not oppose and thus any privilege in these documents was already waived in or about 2017. ***Second***, Ocimum's privilege claims have been persistently deficient.

#### 1.  <u>Any Privilege Was Already Waived by Ocimum's Failure to Object to the 2017 Production of These Documents to AstraZeneca</u>

In or about 2015, Ocimum sued AstraZeneca in the Delaware Superior Court on claims similar to those at issue here. The docket in the AstraZeneca Litigation shows that in September of 2017, AstraZeneca served subpoenas *duces tecum* on multiple third parties, including Baker Donelson and Venable, the law firms that represented, respectively, Ocimum and GeneLogic during the 2007 Asset Acquisition. Szeliga Dec. at ¶¶ 6-9. The docket does not, however, reflect any effort by Ocimum or its former counsel, Baker Donelson, to challenge any of the subpoenas on privilege grounds (or, indeed, any other grounds). *Id.* at ¶ 10. Consistent with that lack of objection, the presence of the subpoenaed documents in the nine boxes at issue, which have been in the possession of Ocimum's counsel for nearly a decade, confirms that the third parties did, in fact, produce the documents sought by AstraZeneca's subpoenas.

11

To avoid production here, Ocimum must show that these documents remain privileged despite their unopposed production to AstraZeneca. In Delaware state courts, as in federal courts, "discovery rules provide that the failure to timely assert a privilege constitutes waiver." *M & G Polymers USA, LLC v. Carestream Health, Inc.*, No. CIV.A.07C-11-242PLA, 2010 WL 1611042, at *56 (Del. Super. Ct. Apr. 21, 2010) (invoking "the fundamental principle that [the privilege holder] had waived any claim of privilege as to those documents by failing to assert it"), *aff'd sub nom. Carestream Health, Inc. v. M&G Polymers USA, LLC*, 9 A.3d 475 (Del. 2010); *see also Morales v. Sunpath Ltd.*, No. CV 20-1376-JLH-SRF, 2024 WL 1556713, at *2 (D. Del. Apr. 10, 2024) (giving defendant only 30 additional days to object to a third-party subpoena after granting plaintiff's motion to compel where defendant had failed to object to the subpoena and warning defendant that if it fails to object it "will be deemed to have waived any objections").

Accordingly, Ocimum's failure to object to the subpoenas and provision of the clawback documents to LGC weighs in favor of a finding that Ocimum cannot prove privilege.

### 2. Ocimum's Privilege Claims Are Grossly Deficient

The Court here entered a stipulated Protective Order that expressly required clawback requests to be supported by a privilege log. *See* D.I. 218 at ¶ 10. Ocimum failed to provide any privilege logs at all for its February Clawback Lists, and the privilege logs it belatedly provided in April and May were deficient under the applicable law.

Where a litigant's privilege log "does not provide sufficient information to allow" the opposing party "to determine whether it can or should" oppose the privilege claim, it is "deficient" and the privilege generally is waived. *Union Pac. Res. Grp., Inc. v. Pennzoil Co.*, No. 1:97-MC-64 JJF, 1997 WL 34655410, at *1 (D. Del. Aug. 12, 1997) (granting motion to compel production of documents identified on privilege log); *see also Rhoads Indus., Inc. v. Bldg. Materials Corp. of Am.*, 254 F.R.D. 216, 221 (E.D. Pa.), *order clarified,* 254 F.R.D. 238 (E.D. Pa. 2008) ("Under

12

Federal Rule 26(b)(5), when a party withholds information otherwise discoverable by claiming attorney-client privilege in the information, that party must 'describe the nature of the documents, communications, or tangible things not produced or disclosed ... in a manner that ... will enable other parties to assess the claim.'"); *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 914 F.Supp. 1172, 1178 (E.D.Pa.1996) ("[F]ailure to assert a privilege properly may amount to a waiver of that privilege.").

In *Union Pacific*, the court found the challenged privilege log "deficient in the categories headed 'Author' [and] 'Recipient'" because the log "only indicate[d] the name" of the authors and recipients. *Union Pacific*, 1997 WL 34655410, at *1-2 (explaining that the privilege holder also must "provide a description of [their] position in the company" and "a statement of [their] duties" if relevant to privilege); *see also ePlus, Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 251-52 (E.D. Va. 2012) (finding that because "many entries" on the defendant's privilege log "do not contain author and recipient information" for documents claimed to be protected by the attorney-client privilege, the defendant "has waived the privilege.").

Ocimum's clawback requests fail to meet the requirements to protect privilege:

- Ocimum's February Clawback Lists were grossly deficient because they:
  - Were not accompanied by any privilege log (in violation of the Protective Order).
  - Provided no information about the ▮ documents at issue other than their "control numbers," which were insufficient to even identify the documents, much less to assess whether they were privileged.

- Ocimum's 4/9/26 Privilege Log was deficient to the point of waiver under the rule set forth in, *e.g.*, *Union Pacific* and *ePlus*, because it:
  - Claimed attorney-client privilege for ▮ documents (out of ▮ total) for which Ocimum could not name an author, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ *Id.* at ¶ 49(b)(i).

- Claimed attorney-client privilege for ██████████████ documents that on their face do not disclose who wrote them or what the author's profession or employer was. *Id.* at ¶ 49(b)(ii).

- Claimed attorney-client privilege for █ documents for which Ocimum did not even identify any recipient – it simply left that field blank. Szeliga Dec. at ¶ 49(b)(iii).

- Claimed no privilege at all for █ documents. *Id.* at ¶ 49(a).

- Claimed attorney-client privilege (and nothing else) for █ of the █ documents even where the description clearly shows that the only privilege even potentially at issue is work product, not attorney-client. *Id.* at ¶ 49(b)(iv).

- Ocimum's 5/28/26 Privilege Log was deficient to the point of waiver under the rule set forth in, *e.g.*, *Union Pacific* and *ePlus*, because it:

  - Claimed attorney-client privilege for █ documents (out of █ total) for which Ocimum could not name an author, ████████████████████████████ ██████████████████████████████████████ *Id.* at ¶ 59(b).

  - Claimed attorney-client privilege for the same ████████████ with no identified author that Ocimum had identified on the 4/9/26 Privilege Log, a deficiency that LGC had brought to the attention of Ocimum's counsel before Ocimum served this 5/28/26 Privilege Log. *Id.* at ¶¶ 59(b)(i) & 50.

  - Claimed attorney-client privilege for █ documents for which it does not identify a recipient. *Id.* at ¶ 59(c).

Ocimum's 4/9/26 and 5/28/26 Privilege Logs are even more lacking in sufficient information than the logs at issue in *Union Pacific* and *ePlus*. These deficiencies are all the more striking in light of the fact that Ocimum spent three and a half months developing its privilege claims here, issuing four separate clawback requests and two privilege logs between February 18 and May 28, 2026, and Ocimum had the benefit of multiple meet-and-confers and detailed emails from LGC's counsel explaining where and why Ocimum's clawback requests fell short.

In sum, Ocimum has now had four "bites at the apple," but it has still failed to provide an adequate privilege log. Litigants who took only one failed bite at the privilege-log apple have been found to have waived their privilege. *See, e.g.*, *Union Pacific*, 1997 WL 34655410, at *1-2 (granting motion to compel). The Court should find that Ocimum has waived it here.

**B. Even Without Considering the Prior Production to AstraZeneca, Under Rule 502(b) Ocimum Has Waived Any Privilege Here**

A party seeking to claw back inadvertently produced privileged documents must establish that they are privileged *and* that all three requirements of Rule 502(b) are met. *See* Fed. R. Evid. 502(b) (requiring showings that (1) the disclosure was inadvertent; (2) the holder of the privilege "took reasonable steps to prevent disclosure"; and (2) the holder "promptly took reasonable steps to rectify the error, including (if applicable) following Federal Rule of Civil Procedure 26(b)(5)(B)");[4] *see also*, *e.g.*, *Wise v. Washington Cnty.*, No. CIV.A. 10-1677, 2013 WL 4829227, at *2 (W.D. Pa. Sept. 10, 2013) (finding privilege waived, and thus allowing plaintiff to use an inadvertently disclosed memorandum from defendant to his lawyer, where "Defendants [had] not met their burden of showing that all of the Rule 502(b) requirements have been met."). In implementing the Rule 502(b) standard, courts in the Third Circuit consider five factors:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of the document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosure; (4) any delay and measures taken to rectify the disclosure, and (5) whether the overriding interests of justice would or would not be serviced by relieving the party of its errors.

*Magnetar*, 886 F. Supp. at 478 (citing *Fidelity & Deposit Co. of Md. v. McCulloch*, 168 F.R.D. 516, 521 (E.D. Pa. 1996)).

**1. Ocimum Has Not Met and Cannot Meet the Rule 502(b) Standard**

Even without considering the prior production of these documents to AstraZeneca, under Rule 502(b), Ocimum's production to LGC here, alone, operates as a waiver. *First*, Ocimum did not take reasonable precautions to prevent disclosure. *Second*, the number and extent of allegedly privileged documents that Ocimum produced here weighs in favor of disclosure. *Third*, Ocimum

---

[4] Rule 26(b)(5)(B) is the model for the standard clawback provisions found in many protective orders, including the P.O. entered in this case. *Compare* 26(b)(5)(B) *and* ECF 218 ¶ 10.

did not act promptly to rectify its alleged error, and when Ocimum finally did attempt to rectify its alleged error, it did not act reasonably. ***Finally***, the interests of justice would not be served by relieving Ocimum of its errors given how Ocimum handled allegedly privileged documents █

████████████████████████████████████████████████████████████████████████████

### i.    *Ocimum Failed to Take Reasonable Precautions to Prevent Disclosure*

Ocimum did not take reasonable precautions to prevent disclosure. *See Magnetar*, 886 F. Supp. at 478. Instead, Ocimum gave LGC nine boxes of documents, including boxes from Ocimum's counsel Baker Donelson and GeneLogic's counsel at Venable, without any apparent privilege review, without providing a privilege log, and without mentioning any potential privilege issues to LGC's counsel. *See id.* at ¶ 14.

Similarly, Ocimum apparently never digitized the documents, and thus it could not have taken the reasonable step of "employ[ing] a sophisticated computer program to conduct its privilege review…" *United States v. Sensient Colors, Inc.*, Civ. No. 07-1275, 2009 WL 2905474, at *4 (D.N.J. Sept. 9, 2009) (finding such precautions reasonable under the Third Circuit's five-factor test, but holding the privilege waived due to other factors). To the contrary, Ocimum's counsel handed nine boxes of hard-copy documents over to LGC's vendor for digitization and review by LGC. *Id.* at ¶¶ 12-13, 22. The timing of Ocimum's clawback requests here – namely, the fact that the first such request came on February 17, 2026, just eight days after LGC provided Ocimum's counsel with a courtesy link to LGC's database of scanned documents – suggests that Ocimum's counsel did not conduct a privilege review until five and a half months after they had produced the documents to LGC. *Id.* at ¶¶ 22-23.

That lack of reasonable diligence is all the more noteworthy because Ocimum's local counsel here actually worked on the AstraZeneca Litigation, was therefore familiar with the documents at issue and the subpoenas that resulted in their production to AstraZeneca, and had

16

kept the boxes of documents in his office since at least the time the AstraZeneca Litigation concluded in 2020. *See id.* at ¶ 51. Particularly in view of the extent of this production – only nine boxes containing fewer than 1500 documents – and the length of time these documents were in the possession of Ocimum's counsel, the failure to take such basic precautions to prevent disclosure of allegedly privileged documents was unreasonable. Moreover, both Mr. Polk and Mr. Chintapalli have claimed that at least some of the nine boxes were marked "Privileged." *Id.* at ¶¶ 23, 24, 56(d). If that is true, then Ocimum's counsel should have noticed that they were so marked and acted accordingly, instead of handing all nine boxes over to LGC. That failure, too, was unreasonable.[5]

In short, Ocimum appears to have taken no precautions at all to prevent the disclosure of any privileged documents that may have been in the nine boxes that Ocimum's counsel gave to LGC. This factor thus favors finding waiver, and accordingly, granting LGC's Motion.

### ii.   *The Number and Extent of Disclosures Supports a Finding of Waiver*

Having produced 1,479 documents in August of 2025, Ocimum sought in February 2026 to claw back ▮ of them (▮ of the total) and then revised its clawback lists to seek ▮ documents ▮), *see* 4/9/26 Privilege Log, and, finally, ▮ documents (▮), *see* 5/28/26 Privilege Log. ▮

▮

For instance, courts in this circuit have recognized that where the inadvertent disclosure comprised 0.0049% of the total production, this factor weighed against waiver. *Wise*, 2013 WL

---

[5] Their accusations that LGC had done something wrong by reviewing these documents was also unreasonable, given that (1) LGC understood them to have been produced to the opposing party in the AstraZeneca Litigation (which would waive any privilege); (2) LGC's counsel, unlike Ocimum's counsel, never actually saw the boxes, since it was LGC's *vendor* (not counsel) who picked them up for scanning and returned them to Ocimum; and (3) Ocimum's February Clawback Lists misidentified the documents at issue by referring to their bates numbers as "control numbers," thus leading LGC to sequester the wrong documents. *Id.* at ¶¶ 47-48.

17

4829227, at *3 (evaluating factor where 49 pages in a production of over 100,000 pages, or 0.0049% were disclosed) (distinguishing *Nesselrotte v. Allegheny Energy, Inc.*, Civ. No. 06-1390 (W.D. Pa. May 6, 2008)). However, where a party "produced approximately 100,000 pages of documents" and inadvertently disclosed "872 pages" of privileged documents, representing 0.87% of the total production, a court in this circuit found that number "not insignificant." *D'Onofrio v. Borough of Seaside Park*, No. CIV.A. 09-6220, 2012 WL 1949854, at *11 (D.N.J. May 30, 2012) (denying motion of disclosing party to recover privileged documents that it had inadvertently disclosed). The *D'Onofrio* court also stated that it did "not necessarily agree" with the disclosing party's position "that the extent of their disclosures," for purposes of this factor, "should be based on their total document production." *Id.* Rather, the court pointed out that it could focus "more narrowly on the total number of documents produced on" the date in question, in which case the proportion of inadvertently produced privileged documents would rise to 3%. *Id.* ███████████████████████████████████████████

████████████████████████████████████    ███████████████████████

██████████████████████

### iii.    *Ocimum Did Not Act Promptly or Reasonably to Rectify Its Error*

Delay is "timed from the point at which the producing party had the ability to understand" that privileged documents had been produced, "or from the point when the party actually learned of that fact." *ECB USA, Inc. v. Savencia, S.A.*, Civ. A. No. 19-731-GBW-CJB, 2024 WL 406437, at *8 (D. Del. Jan. 31, 2024) (citing cases). While Ocimum's delay here could be measured from various points, it is clear Ocimum did not act promptly. The earliest date is August 21, 2025, when Ocimum's counsel presented the banker's boxes to LGC's vendor – boxes that Ocimum's counsel has claimed were marked as privileged, Szeliga Dec. at ¶ 23, which should have given Ocimum "the ability to understand" that they were producing privileged documents. The latest date is

October 1, 2025, when LGC returned the boxes , giving them "the ability to understand" their error both because the boxes allegedly were marked privileged, and because with the boxes were back in their possession, Ocimum's counsel could look inside and see what they had, in fact, produced.

Where the disclosing party "attempted to rectify the disclosures in excess of **three (3) months** after" the inadvertent production, that delay supported a finding of waiver. *Gloucester Twp.*, 38 F. Supp. 3d at 499 (emphasis added). Here, Ocimum's delay was even longer:

- Ocimum made no attempt to rectify its mistake until February 18, 2026, almost **six months** after its August 21, 2025 production, and **four and a half months** after October 1, 2025, when LGC returned the documents to Ocimum's counsel.

- Ocimum's attempts to rectify its mistake in February 2026 were grossly deficient, in that they provided nothing but a list of mischaracterized "control numbers" (thus preventing LGC from identifying and evaluating privilege of the documents at issue).

- Ocimum did not actually identify the documents at issue or provide a privilege log until April 9, 2026 – more than **seven months** after Ocimum produced the documents and **six months** after LGC had returned them to Ocimum. *Id.* at ¶¶ 41-47.

Thus, Ocimum did not act promptly to rectify its alleged error. Particularly given the small number of documents in this production – fewer than 1500 – its delay is not reasonable. Thus, this factor, too, supports a finding of waiver and the granting of LGC's Motion.

Even when Ocimum finally did take steps to rectify its alleged error, those steps were not reasonable. Emails from Ocimum's counsel in February 2026 show that they were not even sure where the documents were, despite the fact that LGC returned them to Ocimum's counsel more than four months earlier, *i.e.* on October 1, 2025. *Id.* at ¶¶ 23, 24. Such complete lack of diligence in protecting allegedly privileged documents cannot be reasonable. Nor was it reasonable for Ocimum's counsel to blame LGC for "review[ing] these documents without promptly notifying Ocimum's counsel" of the alleged privilege issue and to accuse LGC's counsel of violating Delaware attorney ethics rules, *see id.*, when Ocimum's counsel had noted the prior production of these documents in the AstraZeneca Litigation.

19

Further, as discussed in Section III(A)(2), *supra*, Ocimum's attempts, between February and May of 2026, to assert privilege and provide LGC with an adequate clawback notice were grossly deficient, both with respect to the requirements of the Protective Order in this case and with respect to the applicable case law. Section III(A)(2) details the ways in which Ocimum failed to act reasonably to rectify its error, and shows why this factor, too, supports a finding of waiver and the granting of LGC's Motion.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant LGC's Motion to Compel.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Jamaica P. Szeliga
Elissa Brockbank Reese
Susan M. Sajadi
POTOMAC LAW GROUP, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, DC 20006

Susan V. Metcalfe
Eliza Hall
POTOMAC LAW GROUP, PLLC
630 Freedom Business Center Drive, Floor 3
King of Prussia, PA 19406

Dated: June 5, 2026
12963774 / 20212.00002
PUBLIC VERSION
Dated: June 12, 2026

By:  */s/ David E. Moore*
David E. Moore (#3983)
Bindu A. Palapura (#5370)
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE  19801
Tel:  (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com

*Attorneys for Defendant LG Chem, Ltd.*

20